Plaintiff instituted this suit seeking to recover compensation. He alleged that while working as a carpenter for W. Horace Williams Company at Camp Claiborne, Rapides Parish, Louisiana, on January 11, 1941, and while carrying on his shoulder two pieces of lumber 2" x 4" and 18 feet long, he hung his toe under a wire which caused him to stumble and fall face forward; that the accident caused the tissues, muscles and ligaments of both sides of his lower abdomen to be impaired and caused a hernia on both sides of said abdomen, resulting in total and permanent disability.
Defendants deny that plaintiff sustained any accidental hernia or any other injuries through accident arising out of his employment with defendant Company; that prior to January 11, 1941, plaintiff had a left inguinal hernia and had suffered with the said hernia for many years prior thereto.
The lower court in a written opinion rejected plaintiff's demands and he is now prosecuting this appeal. The opinion is as follows:
"Plaintiff, who is 48 years of age, claims compensation for an alleged traumatic hernia, resulting from having tripped and fallen on January 11, 1941. He was carrying on his shoulder, he says, two pieces of lumber as a part of his duties as a carpenter while employed by the defendant in the construction of Camp Claiborne, some 18 miles from Alexandria.
"He testifies that when he got up he was sick and that he had to stop and sit down; that he was directed by his foreman to a doctor in the Camp for first aid, after which this doctor sent him to Alexandria to Dr. H.H. Hardy, Jr. Dr. Hardy examined him on the same day, January 11, 1941, and `found that he had a large, left, indirect inguinal hernia'.
"Plaintiff was examined by or on behalf of Dr. Cappel, so he testified, on Thursday evening before he went to work on Friday, October 25, 1940. He was passed for employment by the examining physician. It is claimed by defendants' counsel that such examination as was made before plaintiff's employment was only cursory due to the extreme need for men to work at the military camp, and that the hernia, although of long duration, was overlooked.
"Dr. Hardy was of the opinion that the hernia was not a recent formation, that is, formed within a week or ten days previous to his first examination. Dr. B.H. Texada examined plaintiff October 7, 1941 and again on the day of trial and on both examinations found plaintiff suffering from a well-developed, complete left inguinal hernia, and that from the history given of plaintiff's hernia, was of the opinion that it was the same hernia he had in 1930, if he had a hernia at that time.
"Drs. G.W. Smith, R.U. Parrott and O.B. Owens, testifying for plaintiff, found him suffering from a well-developed left inguinal hernia. They testified further that if it was as large when plaintiff was examined for employment as it was when they examined him, the hernia should not have been overlooked.
"There is no question but that plaintiff had a hernia in 1930 and 1931. There is professional testimony to that effect. And besides, it is judicially established in a proceeding to which plaintiff was a party and represented by counsel. On April 16, 1931 in a joint petition addressed to the Eleventh Judicial District Court in and for Vernon Parish, Louisiana, signed by his counsel and sworn to by him, it is alleged,
"`That on or about April 10, 1930 * * * Sylvester Townley * * * claims to have sustained while performing services incidental to and arising out of his employment * * * a hernia, resulting in his incapacity to perform his work as a result of the hernia.'
"And the petition further recites that the employer admitted that he had a hernia but that it was sustained long before he went to work for said employer. And the petition further recites that Townley admitted that he did not `suffer any particular accident', but that the hernia merely `descended about April 10, 1030.' Plaintiff was examined by Dr. King Rand April 3, 1931 just before the settlement was made and he reported,
"`He has a left inguinal hernia there is no denying. That same is traumatic in origin is impossible to say; he will only be permanently relieved by an operation.'
"Dr. H.H. Hardy examined plaintiff on January 11, 1941, the same day he alleges he was injured, and found that he had a large, left, indirect inguinal hernia which he says showed no evidence of recent trauma, and he further testified that if plaintiff had a hernia in 1930 and 1931, it *Page 553 
was his opinion that it could not have been cured without an operation.
"Dr. G.W. Smith, testifying for plaintiff, said that he imagined it was possible for a man having a partial or incomplete hernia to get over it but that he had never seen a man that was spontaneously cured. Dr. R.U. Parrott, also testifying for plaintiff, said in response to a question as to a hernia spontaneously curing itself:
"`The hernia could not spontaneously heal itself, if he had a hernia like he has now, it could not. I didn't see him in 1930 but if it was like it is now, he could not have been healed.'
"Dr. O.B. Owens, testifying for plaintiff, said he did not think that if he had a hernia in 1930 and 1931 it would have been cured without an operation or an injection of drugs to stimulate the growth of tissue on the inguinal ring.
"Drs. Rand, Simmons and Texada, in addition to Dr. Hardy, testifying for defendants, were all in agreement that if plaintiff had a hernia in 1930 and 1931, he could not have been relieved or cured without an operation.
"Without a question plaintiff did have a hernia in 1930 and 1931. He set out in a petition that he had a hernia, swore to it after it was read to him, as he now testifies, and was in addition represented by counsel. He collected 12 months' compensation for a hernia and finally compromised his claim for $600.00 additional.
"The swelling and subsequent lancing of the lymph glands below the area of the inguinal canal about which there is some testimony could not have been mistaken, all the doctors agreed, for an inguinal hernia.
"Plaintiff's able counsel places great stress on the fact that plaintiff was examined before he went to work and no hernia was reported. This circumstance undoubtedly weighs in plaintiff's favor. But in the case of Young v. Hillyer, Deutsch, Edwards, Inc. (La.App.) 152 So. 89, where a very similar situation was presented, the court found plaintiff had a previous hernia that had been overlooked, on an examination previous to his employment, on evidence nothing like as strong for the defendants as the facts established here. There the court relied on testimony of lay witnesses to establish a previous hernia. Here there is not only professional testimony to that effect but it has been judicially established for which plaintiff was paid.
"We are not unaware that the compensation act admonishes that it should be liberally construed in favor of the employee and the Court is in full accord with that admonition and will, where reasonably possible, give effect thereto; but when as here an employee claims a traumatic hernia, despite the fact that he once collected for a hernia, and his own medical experts testify to the extreme improbability of an intervening spontaneous cure, there seems no conclusion other than that his present hernia is the same old hernia and not of traumatic origin.
"For these reasons it is ordered, adjudged and decreed that there be judgment rejecting plaintiff's demands.
"Thus done, rendered and signed in Chambers during the Court's vacation period on the 7th day of July, 1942."
We dislike very much to reverse the lower court in a case of this kind which must be determined almost entirely on the facts of the case, but it is our opinion the lower court has failed to give due weight to many well-proven facts, in most instances undisputed, which we are of the opinion control a determination of the case.
It is defendants' contention that plaintiff had a left inguinal hernia in 1930 and was paid compensation for same for twelve months and then compromised for $600 in a lump sum; that the only cure for such a hernia was an operation which plaintiff has never had, and that the hernia he now complains of is the same one he had in 1930 and which he necessarily had when he began working for defendants. It is apparent that the lower court adopted this view and in doing so failed to take into consideration many well-proven facts in the case.
There is serious doubt in our mind that plaintiff had a left inguinal hernia in 1930 although one doctor who examined him at that time produced a report he had made declaring his diagnosis was a left inguinal hernia. Whatever our doubts might be in regard to this, we feel that plaintiff is bound by his judicial admissions at that time to the effect that he was suffering from a left inguinal hernia. He so alleged in a joint petition with the White-Grandin Lumber Company, his then employer, and received $600 in a lump sum compromise settlement in April, 1931. He alleged in that petition that the accident causing the hernia occurred April 10, 1930. *Page 554 
Within twelve months' time after the compromise settlement plaintiff was stricken with pneumonia and confined to his bed for 36 days and this lump in his side which he claims he and the doctor thought was a hernia came to a head. It was lanced and drained, then disappeared. Plaintiff swears that since that time up to the day of the accident he had never suffered from a hernia or any other trouble in the lower abdomen. He had performed manual labor on a farm and as a carpenter for eight years prior to the accident. That he did perform manual labor during that period without complaint is established by the evidence.
It would be folly for this court to say that doctors are all sure as to whether a man has a hernia or not for it is most unusual when all the doctors testifying in this kind of case agree. We have before us at this time a case where no two of the doctors testifying could agree as to the kind of hernia the plaintiff has, whether direct on indirect, femoral or inguinal.
One thing we are sure the record makes certain and that is that whether plaintiff had a hernia in 1930 and 1931 or not, after 1932 it was no longer disabling and he was able to perform his regular manual labor. That a hernia may be cured by Nature without an operation is possible, according to Rose Carless' Manual of Surgery, Sixth Revised Edition, page 1064, wherein it says:
"Natural cure of hernia may in this way be occasionally produced by adhesions forming across the neck of the sac or by an adherent plug of omentum, thus occluding the communication with the peritoneal cavity."
None of the doctors testifying in the case were willing to dispute this authority. They only said they had never seen it happen except in small children.
It is to be noted that the authority says,
"May in this way be occasionally produced." If that be true — and we must accept it — and the facts show plaintiff did recover from his hernia or other troubles, then there is no room to question the fact that he falls under the "occasionally produced" or exceptions provided by said medical authority.
A totally disabling hernia entitles a laborer under the Workmen's Compensation Act of this State to 400 weeks' compensation. Act No. 242 of 1928. At the time plaintiff settled with his employer in 1931, he had been paid 52 weeks' compensation and had 348 weekly payments left to him. It is not reasonable to presume he would have accepted $600 in full settlement unless he had become convinced that he was no longer totally disabled and that his condition was fast improving. The record discloses that within twelve months after the settlement he had fully recovered insofar as being able to perform manual labor without pain or annoyance. This fact is further corroborated by the following facts:
On October 24, 1940, the day before plaintiff went to work for the defendant Company, he was examined by Dr. Cappel, a reputable physician of the City of Alexandria, who was employed by defendant Company to examine plaintiff and other applicants before they were employed. Plaintiff and three other applicants, who knew plaintiff well and were present at the same time for examination, testified that the main part of Dr. Cappel's examination was of the heart and for hernia; that plaintiff was stripped and the doctor made a thorough examination for hernia by examining the groin and inguinal region and having him turn his head to the right and left and cough. The doctor found no hernia and passed plaintiff for manual labor. He went to work the next day, October 25, 1940, and worked as a carpenter, which required him to carry his lumber on his shoulder from one job to the other. Plaintiff continued this work without complaint until the time of the accident on January 11, 1941.
On that morning plaintiff's work consisted of building steps to houses and he had finished at one house and was proceeding to the next. As was required of him he placed two pieces of lumber 2" x 4" and 18 feet long on his shoulder and started to the next house. Before reaching there plaintiff hung one foot in a wire, both ends of which had been buried by a truck running over it, leaving a loop above the ground, which caused him to fall forward. He immediately became sick and sat down and when he was able to get up he reported to his foreman at once that he had jerked his side in the fall. His foreman directed him to go to the First Aid Headquarters, which he did. After a cursory examination there he was sent to Alexandria to Dr. Hardy, another Company or insurer physician, who upon examining him found a hernia and suggested an operation. Plaintiff declined to be operated on at that time for the reason he gave he was in no condition *Page 555 
for an operation and that all of his tools were out on the job and that he preferred to wait until a later date. Three witnesses corroborated plaintiff as to the accident and there is no evidence to refute it, therefore, so far as this record is concerned, the accident occurred as plaintiff alleged.
The hernia found by the doctor on the day of the accident was a complete protruding hernia which was totally disabling, such a hernia, as would have disabled plaintiff from performing the work he had performed for defendant Company from October 25, 1940, to January 11, 1941, the day of the accident.
Defendants contend that plaintiff had this same hernia when he was examined by Dr. Cappel on October 24, 1940 and that the examination was only a cursory one and Dr. Cappel overlooked or did not find it due to haste. To adopt this theory we would have to use our imagination and forget the record as made up. The only man who could have testified that he might have made a mistake was Dr. Cappel and no one else even attempted to. Dr. Cappel resides in the City of Alexandria and stands high in his profession. He was easily accessible to the Court and defendants, but was not placed upon the stand. He was defendants' only hope in this case and they saw fit not to use him. Therefore, the only proof in the record is that the plaintiff was given a thorough examination by Dr. Cappel for hernia and he did not find any such condition existing. Dr. Cappel's ability and reputation are not questioned by defendants, therefore, little credence could be given to anyone who would testify that he could have examined plaintiff specifically for hernia and not have found it if plaintiff had such a hernia as found by the doctors employed by defendants on the same day of the accident.
The lower court based its opinion upon the case of Young v. Hillyer, Deutsch, Edwards, Inc., 152 So. 89, decided by the First Circuit Court of Appeal on January 22, 1934, stating that a similar situation was presented in that case as in the one at bar. To our minds there is a wide difference in the two cases. In the cited case the doctor who examined plaintiff and passed him as fit for work was placed upon the stand and admitted that he might have made a mistake and there were numerous lay witnesses who testified that plaintiff was suffering with a hernia continuously up to the time of the doctor's mistake. In the case at bar the doctor who examined plaintiff was not used as a witness although easily accessible, and no lay witnesses testified that plaintiff had suffered with hernia during a period of eight years prior to the accident he received on January 11, 1941. In fact all of the lay testimony is to the affect that plaintiff had never during that period of time made any complaint whatsoever.
A careful reading of the lower court's opinion clearly discloses that it found that plaintiff had a hernia in 1931 and that since he had not been operated on, the same hernia necessarily was present on January 11, 1941. The facts in this case, coupled with the medical authority quoted above, make it impossible for us to adopt that theory.
Counsel for defendants rely also on the case of Whitfield v. Barber Bros. Construction Company, La.App., 10 So.2d 393, which would be in point if the facts were the same, however, they are not as the facts in this case, in our opinion, disclose that plaintiff did not have a hernia when he went to work for defendant Company on October 25, 1940, and that the hernia he now has was caused by the accident on January 11, 1941.
The record further discloses that plaintiff was receiving a daily wage of $8 per day and working seven (7) days per week and he is entitled to the maximum amount of compensation allowed by law since the hernia he now has is totally and permanently disabling.
We are convinced the judgment of the lower court is erroneous and is now reversed and there is judgment for plaintiff against the W. Horace Williams Company, and the Employers Liability Assurance Corporation, Ltd., in solido, in the sum of $20 per week for a period not to exceed 400 weeks, beginning January 11, 1941, with legal interest on each of said weekly payments from maturity until paid; and for all costs of this suit in both courts. *Page 556